Daniel CHRONISTER *v.* STATE of Arkansas

CA CR 95-1079                                            931 S.W.2d 444

Court of Appeals of Arkansas
Division III
Opinion delivered October 23, 1996

*Robert E. Irwin,* for appellant.

*Winston Bryant,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant Daniel Chronister appeals from his conviction of driving while intoxicated, first offense.

On May 4, 1994, appellant was convicted in Russellville Municipal Court of DWI, first offense, and driving left of center. He appealed his conviction to Pope County Circuit Court, and the case was submitted to the circuit judge, sitting without a jury, on a stipulation of facts and appellant's objection that the city attorney, who was handling the case in circuit court, did not have authority to prosecute a state misdemeanor violation.

In a letter to the attorneys dated May 2, 1995, the circuit judge found that the Russellville City Attorney had authority to prosecute the case and that the appellant was guilty of driving while intoxicated in violation of Ark. Code Ann. § 5-65-103 (Repl. 1993). By judgment entered May 15, 1995, the appellant was sentenced to pay $542.15 as fine and costs, his driver's license was suspended for ninety days, he was directed to attend defensive driving school and an alcohol rehabilitation program, and was sentenced to serve one day in jail, suspended.

Appellant argues on appeal that the case should be remanded because the city attorney was without legal authority to prosecute him. Appellant argues that the city attorney of a first-class city, such as Russellville, is authorized to perform only such duties as are assigned to him by city ordinance, and Russellville City Ordinance No. 988 authorizes the Russellville City Attorney to prosecute municipal violations, but makes no mention of state law violations.

Moreover, according to appellant, Ordinance No. 1411 prohibits the city attorney from engaging in the practice of law except for his duties as city attorney, and the Russellville City Council meant for the city attorney to take care of the city's business only.

Appellant also argues that the prosecuting attorney's written authorization, in compliance with Ark. Code Ann. § 16-21-115 (1987), authorizing the city attorney to prosecute misdemeanor violations of state law occurring within the Russellville city limits was without effect because the city had expressly limited the city attorney's authority.

We affirm the judgment of the trial court because we find that the city attorney was acting as a *de facto* official.

■ A *de facto* official is one who by some color of right is in possession of an office, and performs its duties with public acquiescence, though having no right in fact; the acts of *de facto* officials may not be questioned based upon of the lack of legal authority except by some direct proceeding instituted for the purpose by the State or by someone claiming the office *de jure*, or when the person himself attempts to build up some right, or claim some privilege by reason of being the official he claims to be; in all other cases, the acts of an officer *de facto* are as valid and effectual while he retains the office as if he were an officer by right, and the same legal consequences will flow from them for the protection of the public and third parties. *Faucette, Mayor v. Gerlach*, 132 Ark. 58, 200 S.W. 279 (1918).

■ The rule governing validation of acts of a *de facto* official is based upon public policy, and its origin and history show it is founded in comparative necessity; the doctrine rests upon the principle of protection of the public and third parties, and was engrafted upon the law as a matter of policy and necessity to protect the interest of the public and individuals involved in the acts of persons performing the duties of an official without actually being one in law. *Landthrip v. City of Beebe*, 268 Ark. 45, 593 S.W.2d 458 (1980).

■ In *State v. Roberts*, 255 Ark. 183, 499 S.W.2d 600 (1973), the appellee moved to dismiss the charges against him because the information charging him with the crime was filed by a deputy prosecuting attorney who had not been duly appointed pursuant to statute. The trial court granted the motion and the State appealed. In reversing the trial court, our supreme court discussed what

constituted a "collateral attack," and quoted from a Tennessee case as follows:

> "From the above quotations can be gleaned several guide-lines for determining whether a particular attack upon the title of a public official is 'collateral.' By the very definition of the word if the attack is secondary, subsidiary, subordinate, i.e., related to the main matter under consideration but not strictly a part thereof, the attack is indirect and collateral. If the official's title is questioned in a proceeding to which he is not a party or which was not instituted specifically to determine the validity of his title the attack is collateral. If the title of the officer is questioned in a proceeding in which he is a party merely because he is acting in his official capacity the attack is collateral. Lastly if the attack is made because it is necessary to show the officer's want of title to lay a basis for some other relief the attack is collateral. . . ."

255 Ark. at 186, 499 S.W. 2d at 602.

In the instant case, the prosecuting attorney authorized the city attorney to prosecute misdemeanors in accordance with Ark. Code Ann. § 16-21-115 (1987); the city attorney acted under that authorization; and the circuit court recognized the city attorney's authority.

■ Therefore, under the authority cited above, we think that the city attorney was a *de facto* official, and the attack made upon his authority in this case constitutes a collateral attack and cannot be maintained.

Affirmed.

ROBBINS and GRIFFEN, JJ., agree.