# IN THE SUPREME COURT OF IOWA

No. 21–1765

Submitted January 18, 2023—Filed April 7, 2023

**AUDITOR OF THE STATE OF IOWA, ROB SAND,**

Appellant,

vs.

**AN UNNAMED LOCAL GOVERNMENT RISK POOL,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

The state auditor appeals from a district court order denying an application to enforce a subpoena. **AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Matthew S. Rousseau (argued), Assistant Attorney General, for appellant.

Andrew Tice (argued) and Kristine Stone of Ahlers & Cooney, P.C., Des Moines, for appellee.

**McDONALD, Justice.**

The legislature has vested the Iowa Auditor of State with the authority to conduct audits, reaudits, and financial examinations of the state, state departments, state officers, and certain governmental subdivisions. Iowa Code chapter 11 (2021). In this case, the state auditor initiated a reaudit of the Iowa Communities Assurance Pool (ICAP), a local government risk pool. To facilitate the reaudit, the state auditor issued a subpoena to ICAP for certain financial records. Without conceding the state auditor's authority to proceed, ICAP voluntarily supplied some, but not all, of the requested records. The state auditor then applied to the district court to enforce the subpoena and obtain the remainder of the documents. The district court held ICAP was not a "governmental subdivision" within the meaning of Iowa Code section 11.1(1)(*c*) and thus was not subject to the state auditor's authority. The district court denied the application to enforce the subpoena. The state auditor timely filed this appeal.

I.

A local government risk pool is a form of risk management in which local government entities join together to share and mitigate the risk of loss to the individual members. The Iowa Code provides statutory authority for certain government entities to form a local government risk pool. Iowa Code section 174.8A provides that "[the] association of Iowa fairs, or a fair, shall have the power to join a local government risk pool." Section 296.7 provides school districts may "establish and maintain a local government risk pool." *Id.*

§ 296.7(1)(*a*)(3). Other provisions of the Code provide similar authority to other government entities. *See, e.g., id.* § 331.301(11) (providing statutory authority for counties); *id.* § 347.13(10) (providing statutory authority for county hospitals); *id.* § 364.4(5) (providing statutory authority for cities). Most relevant here, Iowa Code section 670.7(1) provides that a "governing body of a municipality may join and pay funds into a local government risk pool to protect the municipality against any or all liability, loss of property, or any other risk associated with the operation of the municipality."

Iowa Communities Assurance Pool (ICAP) is a local government risk pool formed in 1986 pursuant to Iowa Code section 670.7. ICAP has continuously operated as an unincorporated nonprofit association authorized under section 670.7 since its formation. ICAP has nearly 800 members, all of whom are local government bodies, including "cities, counties, townships, 28E organizations, emergency management agencies, empowerment boards, county fairs, transit authorities, and more." ICAP is audited annually by an independent, private auditor. ICAP's audited financial statements and independent auditor's reports are publicly available on ICAP's website. ICAP's audited financial statements are also provided to and reviewed by the Government Finance Officers Association of the United States and Canada. Since ICAP was formed in 1986, the state auditor had never attempted to assert any authority over ICAP.

That changed in 2019. In 2019, a news article called into question certain out-of-state travel expenses incurred by ICAP board members. In response, the

state auditor initiated an investigation into ICAP's expenses. The state auditor contacted ICAP and sought certain financial records, including payroll, travel, reimbursement, and claims information. The state auditor contended he was entitled to the requested information because ICAP was a governmental subdivision subject to the state auditor's authority. As a conciliatory gesture, ICAP supplied some, but not all, of the requested information. ICAP maintained it was not a governmental subdivision subject to the state auditor's authority.

In late 2019, the state auditor followed up on the initial request by issuing a subpoena to ICAP. ICAP then filed a petition in the district court seeking a declaration that it was not a governmental subdivision subject to the state auditor's authority. The district court dismissed the action without prejudice because "agency process could, at least in the theory, resolve the dispute. If, on the other hand, the dispute continues and the parties are back in court, it will be with a better-developed record." Agency process did not resolve the dispute.

In May 2020, the state auditor sent ICAP an open records request pursuant to Iowa Code chapter 22. ICAP agreed to supply some of the requested documents if the state auditor paid $150, the cost of producing the documents. The parties had some back and forth regarding the scope and cost of production. Throughout the process, however, ICAP maintained it was not subject to the state auditor's authority.

In January 2021, the state auditor served ICAP with the subpoena at issue here. The subpoena ordered ICAP to provide records regarding travel expenses for ICAP board members and nontravel reimbursements to ICAP board members.

The subpoena also ordered ICAP to produce records regarding travel expenses incurred by ICAP board members but paid by someone other than ICAP, settlement agreements over $50,000, reimbursements to ICAP board members, agendas and board meeting materials, and information related to certain contracts with five specified entities. ICAP voluntarily produced some, but not all, of the documents. Throughout, ICAP maintained it was not a governmental subdivision subject to the state auditor's oversight.

The state auditor then filed an application to enforce the subpoena, and the district court denied the application. The district court correctly stated that "[t]he auditor is only empowered to audit entities as permitted by its statutory authority." The district court concluded that no statute granted the state auditor the authority to oversee local government risk pools. The district court further concluded ICAP was not a governmental subdivision subject to the state auditor's authority. Iowa Code § 11.1(1)(*c*).

## II.

This case presents a question of the state auditor's statutory authority. Our review of the district court's decision on questions of statutory interpretation is for the correction of errors at law. *State v. Watkins*, 914 N.W.2d 827, 837 (Iowa 2018). On questions of statutory interpretation, "[w]e begin with the plain language of the statute." *Little v. Davis*, 974 N.W.2d 70, 75 (Iowa 2022). Our task is "to determine the ordinary and fair meaning" of the statute. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). "In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration the language's

relationship to other provisions of the same statute and other provisions of related statutes." *Landowners v. S. Cent. Reg'l Airport Agency*, 977 N.W.2d 486, 495 (Iowa 2022) (quoting *Doe,* 943 N.W.2d at 610). "If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.' " *Doe,* 943 N.W.2d at 610 (quoting *Voss v. State* (*In re Est. of Voss*), 553 N.W.2d 878, 880 (Iowa 1996)).

"The auditor of state is not empowered to audit every entity." *Sand v. Doe,* 959 N.W.2d 99, 109 (Iowa 2021). The state auditor's authority is determined by statute. The state auditor has certain authority over "governmental subdivisions." Iowa Code §§ 11.6–.23. With some exceptions not applicable here, chapter 11 provides that governmental subdivisions shall, at their own expense, be audited annually. *Id.* § 11.6(1)(*a*)(1), (2). Governmental subdivisions can choose to have the audits performed by either the state auditor or a certified public accountant. *Id.* § 11.6(1)(*a*)(2). If the annual audit is performed by a certified public accountant, the resulting audited financial statements must be provided to the state auditor. *Id.* § 11.6(1)(*c*)(2)(a).

Chapter 11 also provides that the state auditor may perform "a complete or partial reaudit of the financial condition and transactions of any governmental subdivision." *Id.* § 11.6(4)(*a*). The state auditor can initiate a complete or partial reaudit only when specific conditions are met. This includes: (1) on the state auditor's finding of "probable cause to believe such action is necessary in the public interest because of a material deficiency in" the annual audited financial statements, (2) by written request from an elected official or employee of the

governmental subdivision, or (3) by petition, if joined by at least one hundred eligible electors. *Id.* § 11.6(4)(*a*)(1)–(3).

The state auditor's authority to conduct an audit or reaudit can be enforced through the subpoena power. *Id.* § 11.51. Iowa Code section 11.51 provides that "in all matters pertaining to an authorized audit or examination, [the auditor shall] have power to issue subpoenas of all kinds." The statute does not grant the state auditor free-floating subpoena power. Instead, the state auditor has the authority to issue a subpoena as an auxiliary aid only while performing an authorized audit or reaudit. *See Sand*, 959 N.W.2d at 106 (stating auditor's authority extends to authorized audits or examinations). Where, as here, a party refuses to comply with the auditor's subpoena, the auditor may seek enforcement from a district court. Iowa Code § 11.52. "A district court will grant a motion to enforce an agency's subpoena if the subpoena is: '(1) within the statutory authority of the agency, (2) reasonably specific, (3) not unduly burdensome, and (4) reasonably relevant to the matters under investigation.' " *Sand*, 959 N.W.2d at 106 (quoting *Citizens' Aide/Ombudsman v. Grossheim*, 498 N.W.2d 405, 406 (Iowa 1993)).

This case involves the state auditor's statutory authority to conduct a complete or partial reaudit of ICAP. The primary issue on appeal is whether ICAP is a "governmental subdivision" within the meaning of the Code subject to the state auditor's authority to conduct a complete or partial reaudit. The Code defines a "governmental subdivision" as:

> cities and administrative agencies established by cities, hospitals or health care facilities established by a city, counties, county hospitals

organized under chapters 347 and 347A, memorial hospitals organized under chapter 37, **entities organized under chapter 28E,** community colleges, area education agencies, and school districts.

Iowa Code § 11.1(*c*) (emphasis added). The parties focus their attention on whether ICAP is an entity "organized under chapter 28E." *Id.*

We think it clear ICAP is not an entity organized under chapter 28E. "Chapter 28E permits state and local governments in Iowa to combine for the stated purposes of '[making] efficient use of their powers by enabling them to provide joint services and facilities with other agencies and to co-operate in other ways of mutual advantage.'" *Allis–Chalmers Corp. v. Emmet Cnty. Council of Gov'ts*, 355 N.W.2d 586, 588 (Iowa 1984) (en banc) (alteration in original) (quoting Iowa Code § 28E.1). To create an entity organized under chapter 28E, the participating government entities must comply with the terms of the statute. First, there must be "[a]ppropriate action by ordinance, resolution or otherwise pursuant to law of the governing bodies . . . before any such agreement may enter into force." Iowa Code § 28E.4. That was not done here. Second, the participating entities must create a 28E agreement with specified content. *Id.* § 28E.5. That was not done here. Third, "[b]efore entry into force," a 28E agreement must be filed with the secretary of state. *Id.* § 28E.8(1)(*a*). That was not done here. Fourth, the Code requires the participating government entities to file an initial report regarding the 28E entity. *Id.* § 28E.8(2)(*a*). That was not done here. Fifth, all amendments and modifications to the 28E agreement must be filed with the secretary of state. *Id.* § 28E.8(1)(*b*). That was not done here. Sixth, each participating entity must file a "biennial report to the secretary of

state." *Id.* § 28E.8(2)(*b*). That was not done here. In short, ICAP has been in existence since 1986 and has almost 800 government entity members, but not one of those almost 800 members made any filing to create or treat ICAP as an entity organized under chapter 28E.

Neither ICAP nor its members followed the statutory requirements to create an entity under chapter 28E because ICAP was formed under Iowa Code section 670.7. ICAP's membership agreement states it was formed pursuant to section 670.7, and the membership agreement further states the "purposes of this Agreement are to form a local government risk pool pursuant to Section 670.7 of the Code of Iowa." One of the original administrators of ICAP stated that ICAP was formed under section 670.7. In one single filing involving the registration of a mark, the applicant identified ICAP as a 28E entity. ICAP contends this was merely a clerical error not entitled to any weight. We agree and do not put any weight on that single stray filing. In all other documents, including filings with the secretary of state, ICAP identified itself as an "Iowa Code Chapter 670 Entity."

The state auditor concedes ICAP is not an entity organized under chapter 28E, but he argues ICAP is a de facto 28E entity that ought to be subject to his authority. The state auditor's argument proceeds in four steps. First, the state auditor argues there is no statute explicitly authorizing government entities to create a local government risk pool. Second, because no statute explicitly authorizes government entities to create a local government risk pool, all local government risk pools must be created pursuant to chapter 28E, which does

allow government entities to exercise powers jointly. Third, because all local government risk pools must be created pursuant to chapter 28E, the state auditor ought to have authority over local government risk pools without regard to whether they were actually organized under chapter 28E. Fourth, and finally, the state auditor contends that public policy considerations require he have the authority to audit local government risk pools.

The state auditor's argument is unavailing. His initial two premises—that there is no authority for the formation of a local government risk pool outside chapter 28E and that a local government risk pool therefore must be organized under chapter 28E—are incorrect. As noted above, multiple provisions of the Code allow government entities to establish, join, and pay funds into a local government risk pool. *See, e.g.*, Iowa Code § 174.8A; *id.* § 296.7(1)(*a*)(3); *id.* § 331.301(11); *id.* § 347.13(10); *id.* § 364.4(5); *id.* § 670.7(1). The state auditor counters that these provisions, including section 670.7, authorize government entities to join an already-established local government risk pool but not to create one. We disagree. The repeated statutory authorizations to establish, join, and pay into a local government risk pool implicitly confer the authority to create a local government risk pool outside of chapter 28E.

With respect to the state auditor's third argument, even if the state auditor were correct that ICAP should have been created as an entity organized under chapter 28E, it does not follow that the state auditor has authority over ICAP as a de facto 28E entity. The state auditor relies on *City of Windsor Heights v. Spanos*, 572 N.W.2d 591 (Iowa 1997). In that case, a city attorney and county

attorney alleged they had entered a 28E agreement whereby one could prosecute charges only the other could otherwise prosecute. *Id.* at 592–93. A defendant collaterally attacked the city attorney's authority to pursue charges. *Id.* at 592. Even though the attorneys had no written agreement of their arrangement, the court held the city attorney had de facto authority to prosecute the charges notwithstanding the absence of an actual written agreement. *Id.* at 594. That case dealt with the officer's de facto authority and not the status of a separate legal entity. *Spanos* does not support the state auditor's position.

The state auditor also argues *Hawkeye Foodservice Distribution, Inc. v. Iowa Educators Corp.* supports his de facto 28E entity theory. 812 N.W.2d 600 (Iowa 2012). In *Hawkeye Foodservice*, the plaintiff, Hawkeye, challenged the establishment of a corporation jointly created by area education agencies to purchase goods and services at volume and for a lower price. *Id.* at 602. The plaintiff argued the area education agencies, by creating a corporation rather than a 28E entity, "improperly exceed[ed] their authority granted by statute." *Id.* at 606 n.3. Hawkeye sought a declaration that "the establishment, existence, and operation of [the corporation] was unauthorized and in violation of chapter[] . . . 28E of the Iowa Code." *Id.* at 602. Hawkeye requested the court enjoin the corporation "from further operation in violation of Iowa law." *Id.* This court held Hawkeye stated a viable claim and should be allowed to proceed on the merits to enjoin the corporation's conduct as unlawful. *Id.* at 612. Under *Hawkeye Foodservice*, a party with standing might be able to enjoin the operation of an illegally created entity, but that is it. *See also Landowners*, 977 N.W.2d at 500

("A fundamental requirement for the enforcement of a municipal contract is that the municipality must have exercised its authority to enter into the contract within the scope of the powers conferred by statute. If a municipality fails to appropriately exercise its authority or comply with statutory procedures, the contract is void.") (quoting *Miller v. Marshall County*, 641 N.W.2d 742, 750–51 (Iowa 2002)). The case cannot be read to allow this court to recategorize ICAP and subject it to the state auditor's authority.

In addition to not being supported by precedents, the state auditor's de facto 28E entity argument is contrary to the statutory text. The relevant statute gives the state auditor the authority only over "[g]overnmental subdivisions." Iowa Code § 11.1(*c*). As relevant here, a governmental subdivision includes those entities "organized under chapter 28E." *Id.* The state auditor concedes ICAP was not organized under chapter 28E but nonetheless argues he should be allowed to proceed as if ICAP were. If the legislature wanted to vest the state auditor with authority over entities that should have been organized under chapter 28E but were not, or if the legislature wanted to vest the state auditor with authority over entities similar to entities organized under chapter 28E, the legislature could have done so. But it did not do so. In interpreting statutes, we are bound to apply the "language chosen by the legislature and not what the legislature might have said." *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016).

Related to this, in his fourth point, the state auditor raises a public policy concern. He argues ICAP has public entity members and uses public funds and

that ICAP should thus be subject to his oversight. The state auditor had never attempted to assert authority over ICAP in the thirty-three years prior to this case, and it is not as if ICAP is some fly-under-the-radar operation. ICAP has almost 800 government entity members all subject to the state auditor's authority. In addition, as ICAP's independent auditor's report notes, "[t]he Iowa League of Cities, the Iowa State Association of Counties, and the Association of Iowa Fairs endorse and promote the pool." Of course, we recognize that no claim of estoppel can lie against the government. However, the state auditor's historical treatment of ICAP is informative.

In any event, while it might be good policy to subject local government risk pools to some oversight, it does not follow that the state auditor is the person who should be vested with such authority. Other jurisdictions vest oversight authority of local government risk pools with different government officials. *See, e.g.*, Colo. Rev. Stat. § 24-10-115.5(2) (2018) (commissioner of insurance); N.H. Rev. Stat. Ann. § 5-B:4-a (2016) (secretary of state); Minn. Stat. § 471.982(1) (2013) (commissioner of commerce); N.C. Gen. Stat. § 58-23-26 (2009) (insurance commissioner); N.D. Cent. Code § 26.1-23.1-04 (1989) (insurance commissioner); 28 Tex. Admin. Code § 7.87 (West 1994) (department of insurance); Wis. Stat. § 611.23 (2022) (insurance commissioner). And, here, it is not as if ICAP has no oversight. ICAP's constituent members are each subject to the state auditor's authority. In addition, ICAP is overseen by a private accounting firm, ICAP's audited financial statements are made available to the

public, and ICAP's audited financial statements are reviewed by the Government Finance Officers Association of the United States and Canada.

The question presented in this case is not whether a government official should be vested with oversight of local government risk pools. The question presented in this case is whether the relevant statute vests the state auditor with the authority to audit and issue a subpoena to ICAP. The plain language of the statute, as relevant here, vests the state auditor with the authority over governmental subdivisions, including entities "organized under chapter 28E." Iowa Code § 11.1(1)(*c*). ICAP was not organized under chapter 28E. It is not in the judiciary's "prerogative to rewrite the statute" to address the state auditor's newfound concern about ICAP. *Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 117 (Iowa 2011). The judicial task is to determine whether the statute as written authorizes the state auditor's attempted exercise of authority. This statute does not.

### III.

We hold that ICAP, a local government risk pool organized as an unincorporated nonprofit association under Iowa Code 670.7, is not an entity organized under chapter 28E and is thus not a governmental subdivision over which the state auditor has statutory authority. The district court thus did not err in denying the state auditor's application to enforce the subpoena against ICAP.

**AFFIRMED.**